UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ERNESTO SANDOVAL, | ) | 1:06-CV-01235 LJO JMD HC |
| | ) | |
| Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| v. | ) | REGARDING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| JAMES YATES, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of California Department of Corrections pursuant to a judgment of the Fresno County Superior Court. (Pet. at 1.) Petitioner was convicted by a jury of four counts of lewd act upon a child (Cal. Penal Code § 288(a)), one count of forcible lewd act upon a child (Cal. Penal Code § 288(b)(1)), and one count of forcible rape (Cal. Penal Code § 261(a)(2)). (Answer at 1-2). Petitioner was sentenced to 22 years in state prison. (Pet. at 1; Answer at 2).

Petitioner appealed his conviction to the California Court of Appeal. On September 12, 2005, the appellate court affirmed the trial court's judgment. (Pet. at 2; Answer at 2).

On October 21, 2005, Petitioner filed an application with the California Supreme Court to review the Court of Appeal's decision. (Answer at 2). The California Supreme Court denied the petition on November 30, 2005. (Pet. at 2; Answer at 2.)

On September 11, 2006 Petitioner filed the instant petition in this Court. The petition raises

two grounds for relief. First, Petitioner asserts that his right to due process, under the Fifth Fourteenth Amendment, as well as his right to a reliable jury determination, under the Sixth Amendment, were denied by the trial court's admission of propensity evidence. Secondly, Petitioner contends that the trial court's erred in instructing the jury pursuant to CALJIC 2.50.02 and consequently violated his Fourteenth Amendment right to due process by allowing the jury to find Petitioner guilty without necessarily finding every element of the offense true beyond a reasonable doubt.

On February 16, 2007, Respondent filed an answer to the petition.

On May 24, 2007, Petitioner filed a traverse to the answer.

## FACTUAL BACKGROUND[1]

Sandoval was convicted of four counts of violating Penal Code section 288, subdivision (a), one count of violating Penal Code section 288, subdivision (b)(1), and one count of violating Penal Code section 261, subdivision (a)(2). All of the charges arose from his relationship with and conduct towards A., who was 13 years old at the time of the commission of the offenses.

Prior to his involvement with A., Sandoval dated A.'s sister, Rosanna. Rosanna dated Sandoval when she was 19 years old but ended the relationship because he was abusive. On one occasion Sandoval pushed Rosanna, causing her to fall to the floor. Another time he punched her in the face and eye, causing a black eye. One time Sandoval punched her in the jaw and stomach. There were several times when Sandoval ordered her to remain in her room and would not allow her contact with other people.

A few weeks after Rosanna ended her relationship with Sandoval, Sandoval began dating A. After a while, they began having sexual intercourse. Eventually, Sandoval moved A. into the house where he was staying and she shared his room. Sandoval and A. had sex about once a week. Sometimes the sex was consensual; sometimes Sandoval forced her.

About a month later, Sandoval moved A. to his mother's house. A. shared a room with

---

[1] These facts are derived from the factual summary contained in the California Court of Appeal's opinion issued on September 12, 2005. (Lodged Doc. 1). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004). Petitioner does not challenge the state court's findings of fact with respect to the underlying events.

1  Sandoval for approximately five months. During this time, she had sex with Sandoval nearly every
2  day. If she did not want to have sex, Sandoval would order her to take off her clothes and hit or kick
3  her if she failed to comply.

4      On one occasion when they were in Sandoval's car, A. told him she did not want to have sex
5  and he punched her in the ribs. He then ordered her to take off her clothes and have sex with him or
6  he would hit her again. A. complied. Another time while in the car, A. declined to engage in sex.
7  Sandoval yelled, "Why? You [fucking] somebody else?" He then hit her.

8      When A. said she wanted to return to her own home, Sandoval refused to allow her to leave.
9  A. did not leave his house on her own because she was afraid either Sandoval or one of his family
10 members would stop her. Sandoval also threatened to kill her and her family if she left him.

11     Sandoval took A. with him when he left for work. He required A. to remain in his car while
12 he worked, sometimes for as long as 10 hours straight. Because A. was afraid of Sandoval, she
13 would not get out of his car.

14     If A. looked at another man, Sandoval would hit her. A. was afraid to talk to other people,
15 including Sandoval's family, for fear of being hit by Sandoval.

16     Sandoval's mother and two siblings testified that A. never lived in their house or cohabited
17 with Sandoval. Sandoval's parole officer conducted scheduled home visits about every 60 days at the
18 home of Sandoval's mother. The parole officer visually inspected Sandoval's room and did not see
19 any items in plain view that belonged to a juvenile female.

20     In February 2003, A.'s mother and Rosanna contacted Sandoval's parole officer and reported
21 the relationship with A. Sandoval had a condition of parole requiring him to report any relationships;
22 he failed to notify the parole officer of his relationship with A. The parole officer filed a report with
23 the Board of Prison Terms. In July 2003, A. gave a statement to the Fresno police.

24     The jury returned its verdicts on June 10, 2004. On July 8, 2004, the trial court imposed a
25 sentence of 22 years in state prison.

26                           **DISCUSSION**

27 **I.**     **Jurisdiction**

28     A person in custody pursuant to the judgment of a state court may petition a district court for

relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. Furthermore, the challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed on September 11, 2006 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

## II.     Standard of Review

This Court may entertain a petition for a writ of habeas corpus by "a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Under AEDPA, a court will not grant an application for a writ of habeas corpus unless the state court's adjudication of the claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States."" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what constitutes "clearly established Federal law,"

this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., quoting Williams, 529 U.S. at 413.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, quoting 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999). Furthermore, AEDPA requires that the Court give considerable deference to state court decisions. The state court's factual determinations are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state court's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

### III.     Review of Petitioner's Claims

####   A.     Ground One

Petitioner contends that the trial court's admission of propensity evidence violated his rights

to due process and to a reliable jury determination. Petitioner argues that the uncharged instances of domestic violence did not bear a substantial nexus to the sex crimes charged therein and therefore it was error for the trial court to admit the evidence.

These claims were presented in an appeal of Petitioner's conviction before the California Court of Appeals. The appellate court affirmed the conviction in a reasoned decision issued on September 12, 2005. The court rejected Petitioner's claim that there existed an insufficient nexus between the prior instances of domestic violence and the charged sexual offenses, citing to previous state appellate court rulings that domestic violence encompasses rape. (Lod. Doc. 1). Petitioner raised the same issues in an application for review to the California Supreme Court. The state supreme court denied the petition without comment on November 30, 2005. By its "silent order" denying the petition, the California Supreme Court is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

This Court's review is limited to determining whether the state court unreasonably applied clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1); Delgado v. Lewis, 223 F.3d at 979-80. The Supreme Court has expressly reserved the question of whether a trial court's admission of propensity evidence may violate the Due Process Clause. Alberni v. McDaniel, 458 F.3d 860, 863-867 (9th Cir. 2006) *cert denied*, U.S. , 127 S.Ct. 1834 (2007) (citing Estelle v. McGuire, 502 U.S. 62, 75 N. 5, 112 S.Ct. 475 (1991). Consequently, a state court's conclusion, that the admission of propensity evidence does not violate a defendant's right to due process, is neither contrary to nor an unreasonable application of clearly established Federal law. Id. at 866-67; Mejia v. Garcia, No. 06-16460, 2008 WL 2853384, at *8 (9th Cir. 2008).

**B.     Ground Two**

Petitioner contends that his rights were violated when the trial court instructed the jury pursuant to CALJIC 2.50.02. Specifically, Petitioner alleges that the instructions allowed the jury to find Petitioner guilty without necessarily finding every element of the offense true beyond a reasonable doubt.

The Due Process Clause of the Fourteenth Amendment requires that the state prove all

elements of the offense charged and all facts necessary to establish each of those elements beyond a reasonable doubt. See Sullivan v. Louisiana, 508 U.S. 275, 277-78, 113 S.Ct. 2078 (1993); In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068 (1970). A defendant's right to due process is denied where a jury is not properly instructed that the defendant's guilt must be proven beyond a reasonable doubt. Sullivan, 508 U.S. at 278. However, not all errors in a jury instruction rises to the level of a due process violation. Middleton v. McNeil, 541 U.S. 433, 437, 124 S.Ct. 1830 (2004). Consequently, the Petitioner must show that the jury instruction so infected the entire trial that the resulting conviction violated due process. Estelle, 502 U.S. at 72.

A federal court examines the jury instruction in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169, 102 S.Ct. 1584 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154, 96 S.Ct. 1708 (1977)); see also United States v. Frazin, 780 F.2d 1461, 1468 (9th Cir. 1986), *cert. denied*, 479 U.S. 844 (1986). If the charge, as a whole, is ambiguous the court must inquire whether there is a reasonable likelihood that the jury erroneously applied the instruction in a way that violates the Constitution. Estelle, 502 U.S. at 72 n. 4 (*quoting* Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190 (1990)).

The trial court instructed the jury, pursuant to CALJIC No. 2.50.02, with the following:

> Evidence has been introduced for the purpose of showing that the defendant engaged in an offense involving domestic violence [on one or more occasions] other than that charged in count six, rape by force of threats.
> "Domestic violence" means abuse committed against an adult or a fully emancipated minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the defendant has had a child or is having or has had a dating or engagement relationship. "Cohabitant" means two unrelated adult persons living together for a substantial period of time, resulting in some permanency of relationship. Factors that may determine whether persons are cohabitating include, but are not limited to, (1) sexual relations between the parties while sharing the same living quarters, (2) sharing of income or expenses, (3) joint use or ownership of property, (4) whether the parties hold themselves out as husband and wife, (5) the continuity of the relationship, and (6) the length of the relationship.
> "Abuse" means intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another.
> If you find that the defendant committed a prior offense involving domestic violence, you may, but are not required to, infer that the defendant has a disposition to commit another offense involving domestic violence. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime of which he is accused in count six, rape by force of threats.
> *However, if you find by a preponderance of the evidence that the defendant committed a prior crime or crimes involving domestic violence, that is not sufficient by itself to prove beyond a reasonable doubt that the committed the offense charged in count six. If you determine an inference properly can be drawn with all other evidence, in determining*

*whether the defendant has been proved guilty beyond a reasonable doubt of the crime charged in count 6.*
      You must not consider this evidence for any other purpose.

(RT 567-569; CT 189-190, emphasis added)

The Court of Appeal rejected Petitioner's contentions that CALJIC 2.50.02 violated his right to due process and the Sixth Amendment, finding the California Supreme Court decision in People v Reliford, 29 Cal.4th 1007 (2003) applicable to CALJIC 2.50.02. In Reliford, the California Supreme Court upheld the 1999 version of CALJIC 2.50.01, a jury instruction similar to the one challenged by Petitioner.[2] Id. at 1012. The court in Reliford found that it was not reasonably likely a jury could interpret the instructions to authorize a conviction of the charged offense based on a lower standard or proof.

In Gibson v. Ortiz, 387 F.3d 812 (9th Cir. 2004), the Ninth Circuit Court of Appeals found that the combination of CALJIC 2.50.01 and 2.50.1 allowed a jury to impermissibly use a lower standard of proof to convict the defendant of the charged offense. However, the Ninth Circuit's decision in Gibson pertained to previous versions of CALJIC 2.50.01 and 2.50.1, distinct from the jury instructions issued in Petitioner's case. The version of CALJIC 2.50.02 used in Petitioner's trial instructed jurors that evidence Petitioner had committed prior offenses was insufficient by itself to prove defendant's guilt beyond a reasonable doubt. (RT 568; CT 190). Additionally, the version of CALJIC 2.50.1 issued to the jury at Petitioner's trial instructed the jury that even if they found that the Petitioner had committed the prior offenses, using a preponderance of the evidence standard, a conviction of the charged offense required a jury finding, based on the evidence as a whole, that the defendant was guilty beyond a reasonable doubt. (RT 569; CT 191).

These admonitions were not present in Gibson as the Ninth Circuit noted the difference in language between the 1999 version upheld by the California Supreme Court in People v. Falsetta, 21 Cal.4th 903 (1999) and the 1996 version the Ninth Circuit rejected as unconstitutional in Gibson. Gibson, 387 F.3d at 819. Thus, unlike in Gibson, the jury instructions in the instant case did not

---

[2]CALJIC 2.50.01 and CALJIC 2.50.02 are identical in all respects except that CALJIC 2.50.01 applies to prior sexual offenses while CALJIC 2.50.02 applies to domestic violence. California's Court of Appeal has interpreted the two instructions as having no material difference for the purpose of analyzing its constitutional validity. People v. Pescador, 119 Cal.App.4th 252, 261-262 (2004) (citing People v. Escobar, 82 Cal.App.4th 1085, 1097 n.7 (2000)).

allow the jury to impermissibly infer that the Petitioner committed the charged offense upon a finding that he committed the prior acts of domestic violence.  On the contrary, the jury was instructed that the prior instances were insufficient by itself to prove Petitioner's guilt and that the conviction still required a jury finding that Petitioner was guilty beyond a reasonable doubt.

Furthermore, the Court is persuaded, after reviewing the jury instructions as a whole, that the jury would not have been confused as to the appropriate burden of proof.  In addition to the admonitions contained in CALJIC 2.50.1 and 2.50.02, the jury was given the definition of reasonable doubt (RT 570-571) and instructed that the prosecution bore the burden of proving beyond a reasonable doubt that the Petitioner committed the charged offenses  (RT 571) before they were read each element of the crime (RT 571-577).  In regards to lesser offenses, the jury was instructed that if they were not satisfied beyond a reasonable doubt that the Petitioner was guilty of the crime charged, they could convict the Petitioner of a lesser offense if they were convinced beyond a reasonable doubt that the Petitioner was guilty of the lesser offense.  (RT 578; CT 209).  Additionally, when instructing the jury on the requirements to find Petitioner guilty on multiple counts of violating Cal. Penal Code section 288, subdivision (a), the jury was instructed that the proof must show beyond a reasonable doubt that Petitioner committed one or more of the acts.  (RT 578; CT 207).

Consequently, the issuance of CALJIC 2.50.02 did not violate Petitioner's due process rights and the state court's determination is neither contrary to nor an unreasonable application of clearly established Federal law.

## **RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neil, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall
2  be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the
3  objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
4  636(b)(1)©.  The parties are advised that failure to file objections within the specified time may
5  waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

8  <u>IT IS SO ORDERED.</u>
9  **Dated:      August 21, 2008                    /s/ John M. Dixon**
                                              UNITED STATES MAGISTRATE JUDGE